UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M.,<br><br>    Plaintiff,<br><br>  v.<br><br>Choice Hotels International, Inc. and Red Roof Inns, Inc.,<br><br>    Defendants. | No. 2:22-cv-00672-KJM-JDP<br><br>ORDER |

  In recent years, survivors of sex trafficking have filed numerous civil suits against hotel brand franchisors, franchisees, and related entities alleging violations of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595. In 2020, plaintiffs in six of these actions moved to centralize approximately three dozen cases in a multidistrict litigation (MDL). *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2020). The MDL Panel denied the motion because of the "unique issues concerning" the allegations in each of the actions, including the lack of a predominant defendant. *Id.* at 1356. As a result, federal district courts across the country are tackling these suits and interpreting the TVPRA on a case-by-case basis.

  Here, plaintiff J.M. brings this suit against hotel franchisors Choice Hotels International, Inc. and Red Roof Inns, Inc. for alleged violations of the TVPRA and civil conspiracy. J.M. does

1

not name defendants' franchisee hotels, Stockton Rodeway Inn and Stockton Red Roof Inn (collectively, the franchisee hotels), where she was trafficked. Choice and Red Roof each filed a motion to dismiss, raising essentially the same arguments. As explained below, the court **grants in part** and **denies in part** defendants' motions.

I.  FACTUAL ALLEGATIONS

Between February 12, 2012 and April 23, 2012, J.M. alleges traffickers rented rooms at defendants' franchisee hotels where they forced J.M. to perform sex with her buyers. First Am. Compl. (FAC) ¶¶ 114–24, ECF No. 10; Opp'n Choice's MTD at 16, ECF No. 20.[1] The traffickers did not attempt to hide their exploits. They forced J.M. to solicit buyers in the franchisee hotels' lobbies and parking lots, and used the hotels' Wi-Fi to advertise the sale of her services. FAC ¶¶ 116, 131. Hotel staff and guests reported seeing J.M. plead for help while being attacked by her traffickers, and noticing bruises and cigarette burns on her body. *Id*. ¶¶ 122, 124–125, 130–131. J.M.'s traffickers paid for rooms in cash, requested rooms away from other hotel guests, and used an excessive number of towels and sheets. *Id*. ¶ 131. Hotel staff cleaning the traffickers' rooms regularly found large quantities of used condoms, empty lube bottles, and sex toys. *Id*. They watched non-paying hotel guests cycle in and out of J.M.'s room every few hours. *Id*. ¶¶ 123, 131. Despite these glaring red flags, the franchisee hotels never asked J.M.'s traffickers to leave, nor did they ask about J.M.'s safety. *Id*. ¶ 132.

Defendants exercise control over their franchisee operations, including hosting online bookings, setting employee wages, making employment decisions, providing standardized training methods for hotel employees, and setting room prices. *Id*. ¶ 233. Defendants also monitor and review guest complaints for their franchisees, including those about the presence of prostitutes at the hotels where J.M. was trafficked. *Id*. ¶¶ 194, 196. Defendants did not take any

---

[1] J.M. clarifies in her opposition that she was trafficked at defendants' franchisee hotels from February 12, 2012 to April 23, 2012, Opp'n Choice's MTD at 16, although those dates cannot be found in her operative complaint, *see generally* FAC. J.M. may amend the complaint to add those dates. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("statements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court.") (emphasis in original).

steps to prevent or stop sex trafficking at the hotels. *Id.* ¶ 133. Rather, J.M. alleges defendants conspired with other hotel chains to enable sex trafficking activities in the hotel industry for profit. *Id.* ¶¶ 278–279.

J.M. brought this action against defendants, alleging violations of the TVPRA and civil conspiracy. *See generally id*. Defendants each filed a motion to dismiss. *See generally* Mem. Choice's MTD, ECF No. 13-1; Mem. Red Roof's MTD, ECF No. 24-1. J.M. opposes both motions. *See* Opp'n Choice's MTD; Opp'n Red Roof's MTD, ECF No. 28. Defendants have replied. Choice's Reply, ECF No. 26; Red Roof's Reply, ECF No. 29. The court held a hearing on October 7, 2022. Mins., ECF No. 36. Steven Babin, Jr. and Angela Nehmens appeared for plaintiff J.M. *Id.* Sara Turner appeared for defendant Choice, and Richard Sullivan for defendant Red Roof. *Id*.

## II.  LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.*

(citing *Twombly*, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense."  *Id.* at 679.

**III.    TVPRA**

The court first considers J.M.'s claim under the TVPRA.  The TVPRA provides criminal penalties for sex tracking, *see* 18 U.S.C. § 1591, as well as civil liability, *see id.* § 1595.  Section 1595 provides a private right of action for victims against both perpetrators of sex trafficking and those who benefit financially from the trafficking:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

*Id.* § 1595(a).  To state a direct beneficiary claim under § 1595, a plaintiff must allege facts that defendants (1) knowingly benefitted (2) from "participation in a venture" (3) that they knew or should have known has engaged in trafficking the plaintiff.  *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020) (citing and quoting 18 U.S.C. § 1595(a)).  As explained below, a plaintiff may hold defendants vicariously liable for their agent's violation of the TVPRA.  *See A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020).

Here, J.M. advances in her complaint two theories of § 1595 liability against both defendants: (A) a direct beneficiary liability claim; and (B) a vicarious beneficiary liability claim.  *See* FAC ¶¶ 201, 273–75.  Defendants argue J.M.'s allegations do not sufficiently plead either theory.  *See generally* Mem. Choice's MTD; Mem. Red Roof's MTD.  Defendants further argue some of J.M.'s § 1595 claims are time-barred under the TVPRA's statute of limitations.  Mem. Choice's MTD at 20; Mem. Red Roof's MTD at 14.

In her opposition, J.M. seeks to add a § 1595 perpetrator liability claim against defendants that is not apparent from the complaint, i.e., that defendants themselves trafficked J.M. by "harboring" her.  *Compare* Opp'n Choice's MTD at 4 *with* FAC ¶¶ 272–76 (mentioning only

4

"Defendants had a statutory obligation not to benefit financially . . . from a venture that they knew, or should have known, engaged in violating the TVPRA."); *see also* FAC ¶ 166 (mentioning only defendants participated in "business ventures" that harbored J.M., not defendants themselves harbored her).

    For the reasons set forth below, the court grants defendants' motion to dismiss J.M.'s direct beneficiary liability claims with leave to amend, but denies defendants' motion to dismiss J.M.'s vicarious beneficiary liability claim. J.M. also may amend the complaint to properly raise her perpetrator liability claim because the current complaint does not "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

    **A.**    **Direct Beneficiary Liability Claim**

    Although J.M. sufficiently alleges the first element of a direct beneficiary liability claim under § 1595, she has not sufficiently alleged the second and third elements of that claim.

    **1.**    **"Knowingly Benefitted"**

    J.M. sufficiently alleges defendants "knowingly benefitted" from her sex trafficking when they received royalty payments, or percentages of the room revenue, from the franchisee hotels where she was trafficked. FAC ¶¶ 15–16. Although defendants argue they must have actually known any benefits were from J.M.'s trafficking, as the court signaled at hearing, this position would render the "should have known" language in § 1595 superfluous. *J.C.*, 2020 WL 6318707, at *4 (citing *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020)); *see also Wash. Mkt. Co. v. Hoffman*, 101 U.S. 112, 115–116 (1879) ("a statute ought, upon the whole, to be construed so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."); *but see* Mem. Choice's MTD at 3–4 (citing *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); Mem. Red Roof's MTD at 2–3 (same). Section 1595 merely requires defendants knowingly receive a financial benefit, and the money defendants receive from traffickers' room rentals constitutes such a benefit. *J.C.*, 2020 WL 6318707, at *4   This conclusion is consistent with the majority view of the courts that have

1  considered similar TVPRA complaints against hotel franchisors. *See id.* (collecting authorities);
2  *but see Noble*, 335 F. Supp. 3d at 525–26.
3      Thus, J.M.'s allegations satisfy the first element.

          **2.     "Participation in a Venture"**

5      As one Circuit court has noted, "[t]he district courts are all over the map on the meaning
6  of ['participation in a venture']." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir.
7  2021) (citation omitted). In the absence of Ninth Circuit guidance, this court is not persuaded by
8  Choice's argument that § 1595 incorporates the definition of "participation in a venture" from
9  § 1591(e)(4): "knowingly, assisting, supporting, or facilitating a violation of subsection (a)(1)."
10 *See* Choice's Reply at 4. Although the court ordinarily presumes phrases in the same statute
11 mean the same thing, *see Law v. Siegel*, 571 U.S. 415, 422 (2014), § 1591(e) unambiguously
12 states its definition of "participation in a venture" applies only "[i]n this section[,]" 18 U.S.C.
13 § 1591(e). Moreover, reading the § 1591(e)(4)'s "knowingly" language into § 1595 would
14 impose a heightened standard inconsistent with § 1595's "should have known" language.
15 *Doe #1*, 21 F.4th at 724; *see also S.G. v. Vagabond Inn Corp.*, 2022 U.S. Dist. LEXIS 104102, at
16 *9 (C.D. Cal. Mar. 2, 2022) (collecting cases).
17     The court thus applies the plain meaning of "participation in a venture" for § 1595. The
18 ordinary meaning of "participation" is "to take part in or share with others in common or in an
19 association." *Doe #1*, 21 F.4th at 725 (citing *Participation*, Black's Law Dictionary (11th ed.
20 2019) and *Participate*, Oxford English Dictionary 268 (2d ed. 1989)). The ordinary meaning of
21 "venture" is "an undertaking or enterprise involving risk and potential profit." *Id.* at 724–25
22 (citing *Venture*, Black's Law Dictionary (11th ed. 2019) and *Venture*, Oxford English Dictionary
23 520 (2d ed. 1989)). Accordingly, the phrase "participation in a venture" requires a plaintiff to
24 "allege that the franchisors took part in a common undertaking or enterprise involving risk and
25 potential profit." *Id.* at 725.
26     Here, J.M. has not sufficiently alleged defendants, who are franchisors, "participated in a
27 venture" that trafficked J.M. Her complaint alleges defendants participated in "a commercial
28 business venture" where they share their names and quality standards with the franchisee hotels in

1    exchange for a percentage of the hotels' revenue.  FAC ¶¶ 163–64.  But these allegations describe
2    a general franchisor-franchisee relationship, not a venture that defendants knew or should have
3    known trafficked J.M.  *See Doe #1*, 21 F.4th at 725 ("[a plaintiff] must plead sufficient facts to
4    plausibly allege that the venture in which the franchisors participated committed one of these
5    crimes against them.").  Although J.M. alleges defendants monitored their franchisee hotels'
6    activities, "[n]one of these allegations suggest that the franchisors participated in an alleged
7    common undertaking or enterprise with [J.M.'s] traffickers or others at the hotel who violated the
8    statute" because "observing something is not the same as participating in it."  *Id.* at 727.

9       As the court covered with the parties in some depth at hearing, J.M. also argues
10   defendants "participated in a venture" because they rented out rooms used for J.M.'s sex
11   trafficking and provided Wi-Fi for J.M.'s advertisement.  FAC ¶¶ 166–68; *see also* Opp'n
12   Choice's MTD at 7–8 (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d. 959, 970–
13   71 (S.D. Ohio 2019)) and *H.H. v. G6 Hosp., LLC,* 2019 WL 6682152, *4–5 (S.D. Ohio
14   Dec. 6, 2019)); Opp'n Red Roof's MTD at 7–8 (same).  But J.M.'s argument here overstates the
15   operative factual allegations.  Defendants did not directly rent rooms or Wi-Fi to J.M.'s
16   traffickers; the franchisee hotels and Wi-Fi service providers did.  *See* FAC ¶¶ 166–68 (alleging
17   defendants' "branded hotels," not defendants themselves, rented rooms to J.M.'s traffickers).
18   Although these allegations may support J.M.'s vicarious liability claim, they do not support a
19   claim that the franchisor defendants directly participated in a venture that trafficked J.M.  *S.G.*,
20   2022 U.S. Dist. LEXIS 104102, at *13–14.

21       J.M. may overcome the shortcomings noted above.  For example, the court in *J.C.* held the
22   hotel franchisors directly "participated in a venture" because they did not stop the plaintiff's sex
23   trafficking, even though the franchisee hotels' staff reported signs of trafficking up the chain, as
24   required under the franchisors' own corporate policies.  2020 WL 6318707, at *7.  Alternatively,
25   J.M. may seek to clarify the franchisor defendants directly rented rooms and Wi-Fi to her buyers
26   and sex traffickers, if such an amendment is possible within the confines of Federal Rule of Civil
27   Procedure 11.  As did the plaintiff in *J.C.*, J.M. must "connect the dots" between her and the

franchisor defendants to satisfy the second element of her direct beneficiary liability claim. *See id.* (citing *B.M.*, 2020 WL 4368214, at *5).

### 3.  "Knew or Should Have Known"

J.M. also has not sufficiently alleged the third element. J.M.'s allegations regarding defendants' general knowledge of sex trafficking problems in the hotel industry, or even at defendants' franchisee hotels, is insufficient to demonstrate defendants should have known about J.M.'s trafficking. *See S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154–55 (E.D.N.Y. 2020) (noting knowledge of general trafficking problem is insufficient to hold hotel franchisors directly liable under § 1595 because the section "speaks in singular terms – 'participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter'").

Because J.M.'s allegations do not meet the second and third elements, the court **grants** defendants' motions to dismiss J.M.'s direct beneficiary liability claim under § 1595 **with leave to amend**.

### B.  Vicarious Beneficiary Liability Claim

Next, J.M. claims defendants are vicariously liable for their franchisee hotels' violation of § 1595. Here, J.M. successfully states a claim.

As a threshold matter, a plaintiff may hold franchisors vicariously liable under the TVPRA. Although the TVPRA does not explicitly address the issue of vicarious liability, "statutes are presumed not to disturb the common law, unless the language of the statute is clear and explicit for this purpose." *State Eng'r of Nev. v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nev.*, 339 F.3d 804, 814 (9th Cir. 2003) (citation and quotations omitted); *see also J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021) (noting numerous district courts have found TVPRA permits agency liability). Where a federal statute does not provide direction, the Ninth Circuit has applied the federal common law of agency. *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017); *see also A.B.*, 484 F. Supp. 3d at 939 (applying federal common law agency principles under TVPRA); *but see B.M.*, 2020 WL 4368214, at * 6 (applying California agency law under TVPRA). The

8

Ninth Circuit applies agency principles from the Restatement (Third) of Agency. *Mavrix Photographs, LLC*, 873 F.3d at 1054.

While a franchisor-franchisee relationship does not necessarily create an agency relationship, the parties agree a franchisor may be held liable for a franchisee's actions if the franchisor controls the franchisee's day-to-day operations. *See* Mem. Choice's MTD at 17; Mem. Red Roof's MTD at 11–12; Opp'n Choice's MTD at 8–9; Opp'n Red Roof's MTD at 17.  Here, J.M. alleges defendants exercised control over the day-to-day operations of the hotels by hosting online bookings, setting hotel employee wages, making employment decisions for the hotels, providing standardized training methods for hotel employees, and fixing hotel room rent prices. FAC ¶ 233.  A majority of district courts have found nearly identical allegations sufficient to plead an agency relationship.  *See S.G.*, 2022 U.S. Dist. LEXIS 104102, at *23–25; *J.C.*, 2021 WL 6318707, at *9–10; *A.B.*, 484 F. Supp. 3d at 940; *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1256–57 (M.D. Fl. 2020); *H.H.*, 2019 WL 6682152, at *6; *but see L.H. v. Marriott Int'l, Inc.*, 2022 WL 1619637, at *8 (S.D. Fl. May 23, 2022) (finding nearly identical TVPRA allegations to J.M.'s "too vague and generalized" to establish agency relationship); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 708 (E.D. Mich. 2020) (same).  This court finds the allegations here are sufficient to show an agency relationship at this stage.

Under this agency relationship, defendants are vicariously liable for their franchisee hotels' violations of the TVPRA.  Defendants do not disagree that J.M.'s allegations would suffice to state a claim against the franchisee hotels for violating the TVPRA.  *See* Mem. Choice's MTD; Mem. Red Roof's MTD.  The hotels' staff saw signs of J.M.'s trafficking, as summarized in the factual allegations section above.  FAC ¶¶ 122–25, 130–31.  The franchisee hotels continued to rent rooms to J.M.'s traffickers and buyers, never bothering to check if J.M. was safe.  *Id*. ¶ 132.  Accordingly, the franchisee hotels benefitted financially from J.M.'s trafficking for the purposes of beneficiary liability under § 1595.  *See B.M.*, 2020 WL 4368214, at *5.

The court **denies** defendants' motion to dismiss J.M.'s vicarious liability claim.

### C. Statute of Limitations

"To dismiss a complaint on statute of limitations grounds, it must appear 'beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Rand v. Midland Nat'l Life Ins.*, 857 F. App'x 343, 347 (9th Cir. 2021) (unpublished) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)). "No action may be maintained under [§ 1595] unless it is commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1).

J.M. asserts her TVPRA claims are not time barred under the "continuing tort doctrine." Opp'n Choice's MTD at 16–17; Opp'n Red Roof's MTD at 18. The court agrees. "The doctrine applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (citation and internal quotation marks omitted). Under this doctrine, the statute of limitations does not begin to run until the continuing wrongful conduct ends. *Id*. Here, J.M.'s allegations as clarified by her briefing fairly paint a picture of defendants' commission of continuing wrongful conduct, whereby J.M. was forced to service her buyers under the control of her traffickers, at defendants' franchisee hotels from February 12, 2012 to April 23, 2012. FAC ¶¶ 115–40. During this three-month period, there is "no single incident that can fairly or realistically be identified as the cause of significant harm." *See Flowers*, 310 F.3d at 1126.

Accordingly, J.M.'s TVPRA claims are not time-barred because she filed her original complaint on April 15, 2022, before the April 23, 2022 deadline for doing so. *See* Compl., ECF No. 1; *but see H.G.*, 489 F. Supp. 3d at 709–10.

## IV. CONSPIRACY

The court next considers J.M.'s claim that defendants and other hotel chains conspired by intentionally refusing to combat human trafficking at their franchisee hotels, in order to maximize their profit. *See* FAC ¶¶ 278–88. "A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012) (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir. 1999), *as*

10

*amended on denial of reh'g* (July 15, 1999)).  To prove conspiracy, a plaintiff must show "a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.*  A conspiracy claim "must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.

Here, J.M. does not plausibly allege an agreement between defendants and other hotel chains to violate the TVPRA.  She alleges, "Defendants, and other Hotel Industry Leaders, failed to take the actions needed to combat the known scourge of human trafficking within their brand hotels." FAC ¶ 104.  J.M. also alleges defendants and other hotel chains collectively advertised their condemnation of human trafficking. *Id.*  But these actions constitute "merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557.  J.M. must plead more than a conclusory statement that "all Defendants had an agreement to profit from sex trafficking in the industry and took overt actions to further that common purpose conspiring to violate § 1595(a)." *See* Opp'n Choice's MTD at 18; Opp'n Red Roof's MTD at 20.

The court dismisses J.M.'s civil conspiracy claim, but with leave to amend if possible.

## V. SHOTGUN PLEADING

Finally, Choice alone argues J.M.'s complaint is an impermissible shotgun pleading that should be dismissed.  Courts have used the term "shotgun pleading" to describe several different pleading problems.  Sometimes it is used to describe a complaint that does not differentiate defendants. *See, e.g., Bonnette v. Dick*, 2020 WL 3412733, at *3 (E.D. Cal. June 22, 2020) ("[I]t is not clear which claims Plaintiffs intend to assert against each of the respective Defendants.").  Sometimes it is used to describe a complaint that violates Rule 10(b), which requires a plaintiff to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and which encourages plaintiffs to separate their claims by "transaction or occurrence." *See, e.g.*, *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 2015 WL 12777092, at *4 (C.D. Cal. Oct. 23, 2015).  "Shotgun pleading" also has been used to describe a complaint that impermissibly "incorporate[s] each preceding paragraph, regardless of relevancy." *See, e.g.*, *Destfino v. Kennedy*, 2009 WL 63566, at *4 (E.D. Cal. Jan. 8, 2009).

11

The complaint here is not a shotgun pleading. While it includes allegations related to the hospitality industry in general, it gives defendants sufficient information to understand the legal claims against each of them and the allegations supporting those claims:

- It introduces the action, *see* FAC ¶¶ 1–9;
- It establishes the court's jurisdiction and venue, *see id*. ¶¶ 10–12;
- It explains who the parties are, with separate subsections for Choice and Red Roof, including allegations about why Choice and Red Roof are jointly and severally liable, *see id*. ¶¶ 13–18; 141–51; 201–45;
- It alleges who did what and when, *see id*. ¶¶ 50–104; 113–289;
- It claims defendants violated the law and explains why, using separate subsections, *see id*. ¶¶ 272–89;
- It requests relief, *see id*. at 64–65; and
- It demands a jury trial, *see id*. at 65.

Certainly, the complaint here could be clearer, shorter, and more organized. *Cf*. Fed. R. Civ. P. 10; *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996). But it is not an impermissible shotgun pleading.

## VI.   CONCLUSION

For the reasons above, the court **grants in part** defendants' motions to dismiss:

- The court dismisses the direct beneficiary liability claims under the TVPRA with **leave to amend.**
- The court dismisses plaintiff's civil conspiracy claim **with leave to amend**.
- Plaintiff may amend the complaint to restate her direct beneficiary and conspiracy claims, and to properly raise her perpetrator liability claim under the TVPRA.

The court **denies** defendants' motions to dismiss plaintiff's vicarious liability claim under the TVPRA, and **denies** defendants' motion to dismiss plaintiff's TVPRA claims based on statute of limitations.

/////

/////

1     Any amendments to the complaint shall be made within **30 days** of this order.

2     This order resolves ECF Nos. 13 & 24.

3     IT IS SO ORDERED.

4 DATED: October 17, 2022.

                                              CHIEF UNITED STATES DISTRICT JUDGE