UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.M., <br><br> Plaintiff, <br><br> v. <br><br> Red Roof Inns, Inc., <br><br> Defendant. | No. 2:22-cv-00672-KJM-JDP <br><br> ORDER |

Plaintiff J.M. seeks damages against Red Roof Inns, Inc. (RRI) under the Trafficking Victims Protection Reauthorization Act (TVPRA). RRI moves for summary judgment. Plaintiff opposes and additionally seeks to strike portions of RRI's motion or to alternatively withdraw judicial admissions. For the reasons set forth below, the court **grants** plaintiff's request to withdraw her judicial admissions and **grants** RRI's motion for summary judgment.

I.  **PROCEDURAL BACKGROUND**

Plaintiff filed this lawsuit in April 2022 against RRI. *See generally* Compl., ECF No. 1. Plaintiff also named Choice Hotels International, Inc., but subsequently filed a notice of voluntary dismissal as to this defendant. Notice, ECF No. 65; Min. Order (Feb. 28, 2023), ECF No. 66. In the complaint, plaintiff alleges RRI is both directly and indirectly liable for her trafficking under 18 U.S.C. § 1595. *See generally* Second Am. Compl. ¶¶ 114–18, ECF No. 52. RRI moves for summary judgment, and the motion is fully briefed. *See generally* Mot., ECF No. 136; Opp'n, ECF No. 149; Reply, ECF No. 157. Plaintiff seeks to strike portions of RRI's motion or in the

1

alternative, to withdraw judicial admissions. Strike Mot., ECF No. 150.[1] RRI opposes. Strike Opp'n, ECF No. 156. The court heard arguments on July 12, 2024. Hr'g Mins., ECF No. 163. Steven Babin, Amanda Walbrun and Jennifer El-Kadi appeared for plaintiff. *Id.* Amanda Villalobos and Nicholas Janizeh appeared for defendant. *Id.*

## II. MOTION TO STRIKE OR WITHDRAW ADMISSIONS

The court first resolves plaintiff's motion to strike or in the alternative withdraw admissions as it has the potential to affect the record on summary judgment. The parties dispute whether the court should deem RRI's first set of requests for admissions (RFAs) admitted. *See generally* Strike Mot.; Strike Opp'n. On November 29, 2023, RRI served plaintiff with RRI's first set of RFAs. El-Kadi Decl. ¶ 2, ECF No. 150-1; RRI's RFAs, Villalobos Decl. Ex. F, ECF No. 136-8. Matters contained in requests for admissions are deemed admitted, "unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).

Plaintiff contends she timely responded to the RFAs on December 20, 2023, and "produced her responses into a repository that [d]efendants had access to through a link provided previously." El-Kadi Decl. ¶ 3. In response, RRI argues the parties never agreed that uploading documents to an electronic link would constitute service. Strike Opp'n at 3.[2] The Federal Rules of Civil Procedure authorize service by "electronic means that the person consented to in writing[.]" Fed. R. Civ. P. 5(b)(2)(E). Here, plaintiff attaches an email demonstrating she sent RRI a link to a repository with her discovery responses in September 2023, and declares RRI utilized this link to access plaintiff's responses to other formal discovery requests. Repository Link, El-Kadi Decl. Ex. A, ECF No. 150-2; El-Kadi Decl. ¶ 3. However, nothing indicates RRI

---

[1] Plaintiffs did not properly notice this motion for the July 12, 2024, hearing date. *See* E.D. Cal. L.R. 230(b). Nonetheless, the court construes the motion as evidentiary objections in opposition to RRI's motion for summary judgment. Despite the procedural deficiencies, given that RRI did not object, filed a response to plaintiff's additional motion, and had an opportunity to be heard during hearing, the court exercises its discretion to consider the motion on the merits.

[2] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

1  agreed this link could be used to serve all discovery responses.  Even if RRI downloaded other
2  discovery responses from the repository, an explicit agreement cannot be implied from conduct
3  alone.  *See* Fed. R. Civ. P. 5 advisory committee's note to 2001 amendment ("[C]onsent must be
4  express, and cannot be implied from conduct."); *see also Kan v. Verdera Cmty. Association*,
5  No. 22-00348, 2024 WL 3861762, at *4 (E.D. Cal. Aug. 19, 2024) (noting informal practice of
6  serving documents by electronic means does not satisfy requirement of express, written consent),
7  *report and recommendation adopted*, No. 22-00348, 2024 WL 4437278 (E.D. Cal. Oct. 4, 2024);
8  *Bunn v. Dash*, No. 20-07389, 2021 WL 4868353, at *5–6 (C.D. Cal. July 23, 2021) (finding
9  agreement to service by electronic means could not be implied from conduct).  Accordingly,
10 because plaintiff never served her responses on RRI, under Federal Rule of Civil Procedure
11 36(a)(3), the court deems the RFAs admitted.  *See, e.g.*, *Davis v. Elec. Arts Inc.*, No. 10-03328,
12 2017 WL 8948082, at *2 (N.D. Cal. Sept. 12, 2017) (finding service "not properly effected by
13 emailing the discovery to defense counsel" because plaintiffs did not "present any evidence that
14 [d]efendant consented to electronic service in writing").

15      However, under Rule 36(b), the court may "exercise its discretion to grant relief from an
16 admission made under Rule 36(a)" if two conditions are met: "(1) the presentation of the merits
17 of the action will be subserved, and (2) the party who obtained the admission fails to satisfy the
18 court that withdrawal or amendment will prejudice that party in maintaining the action or defense
19 on the merits."  *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (internal quotation
20 and citations omitted).

21      To determine whether the first condition is met, courts consider whether "upholding the
22 admissions would practically eliminate any presentation of the merits of the case."  *Id.* (quoting
23 *Hadley v. United States,* 45 F.3d 1345, 1348 (9th Cir. 1995)).  Here, RRI filed its motion for
24 summary judgment based largely on the deemed admissions.  *See generally* Mot.  These
25 admissions include: "RRI did not knowingly benefit or conspire to benefit from [p]laintiff's
26 alleged sex trafficking at the RRI Stockton" and "RRI did not know or should not have known
27 that [p]laintiff was allegedly sex trafficked at RRI Stockton."  Def.'s Stmt. Undisp. Mat. Facts
28 (SUMF) ¶¶ 30–31, ECF No. 136-1.  Most significantly, plaintiff is deemed to have admitted that

1  RRI did not violate 18 U.S.C. § 1595. *Id.* ¶ 32. Because these admissions go directly to the
2  elements and the single claim at issue, upholding the admissions would eliminate any need for a
3  presentation on the merits. RRI conceded as much at the hearing. Hr'g Tr. at 7: 9–17, ECF
4  No. 165. Therefore, the first condition is met. *See e.g.*, *Conlon*, 474 F.3d at 622 (holding
5  similarly); *cf. Cybernet Ent., LLC v. IG Media, Inc.*, No. 12-01101, 2015 WL 12618406, at *2
6  (D. Ariz. Mar. 12, 2015) (finding while matter could continue on merits despite plaintiff's
7  admissions, "sustaining the admissions would eliminate genuine disputes at the core of this case
8  and prejudice [p]laintiff in maintaining its claims for purposes of Rule 36(b)").

9  Next, the court looks to whether the party relying on the deemed admissions—RRI—
10 would be prejudiced. "The party relying on the deemed admission has the burden of proving
11 prejudice." *Conlon*, 474 F.3d at 622. Here, RRI claims it would be prejudiced because plaintiff's
12 responses to the RFAs were due six months ago, it has relied on plaintiff's admissions and
13 discovery is now closed. Strike Opp'n at 5. The Ninth Circuit instructs district courts to focus on
14 the prejudice the nonmoving party would suffer at trial. *Conlon*, 474 F.3d at 623 (citation
15 omitted). "[R]eliance on a deemed admission in preparing a summary judgment motion does not
16 constitute prejudice," and "a lack of discovery, without more," does not necessarily constitute
17 prejudice. *Id.* at 624.

18 Here, RRI relied on plaintiff's deemed admissions for a significant period of time and
19 represents it did not conduct additional discovery on particular issues based on its reliance on
20 those admissions. Strike Opp'n at 5. Nonetheless, RRI contends its motion for summary
21 judgment can proceed even if it does not rely on the deemed admissions. Therefore, the court
22 finds RRI has not met its burden in proving it would suffer prejudice if the admissions are not
23 upheld. Accordingly, the court **grants** plaintiff's request to withdraw her admissions to RRI's
24 first set of RFAs.

25 With this clarification, the court turns to determine the undisputed facts and consider the
26 merits of RRI's summary judgment motion. *Cf. Khademi v. Langes*, No. 19-00437, 2021 WL
27 107159, at *4 (E.D. Cal. Jan. 12, 2021), *report and recommendation adopted*, No. 19-0437,

2021 WL 1088279 (E.D. Cal. Mar. 22, 2021) (proceeding to merits of summary judgment motion after allowing plaintiff to withdraw admissions).

### III.   UNDISPUTED FACTS

Having granted plaintiff's request to withdraw, the court finds the undisputed facts are as follows unless otherwise stated.  On approximately February 10, 2012, Mario Blount and two of his associates trapped plaintiff in a room at the Executive Suites in Stockton, California and threatened to harm plaintiff unless she agreed to work for Blount.  Pl.'s Resp. SUMF No. 6, ECF No. 149-1; J.M. Dep. at 98:21–25, 99:24–25 (on file with court).[3]  Plaintiff was sleep deprived, not allowed food and forced to use methamphetamine.  J.M. Dep. at 106:2–4.  Blount then became plaintiff's primary trafficker.  Pl.'s Resp. SUMF No. 7; J.M. Dep. at 112:9–25.  Plaintiff was forced to engage in commercial sex until April 2012 at multiple hotels.  Pl.'s Resp. SUMF No. 8, 33; J.M. Dep. at 110: 25–111:4.  One of these hotels was the Red Roof Inns Stockton (RRI Stockton).  Pl.'s Resp. SUMF No. 9; J.M. Dep. at 110:6–19.  Over the three month period that plaintiff was trafficked, plaintiff stayed at the RRI Stockton "[a]bout seven days out of each month."  J.M. Dep. at 122:10–18.

At the RRI Stockton, the "Johns"—those engaging in commercial sex with plaintiff—would typically enter and exit plaintiff's room from the stairway.  *Id.* at 124:23–125:7.  Plaintiff was told to keep her interactions with the RRI Stockton staff as "minimal as possible."  *Id.* at 125:13–19.  She was always escorted to the front desk by one of the two girls who worked for Blount, each of whom also prevented plaintiff from leaving the premises.  *Id.* at 112:20–25, 117:13–14.  "Johns" approached plaintiff in the lobby in front of the staff and according to plaintiff, the staff "put two and two together."  *Id.* at 120:14–25.  Blount "had a friend that worked at the front desk" that would allow them to stay even if they "didn't have the rent money to pay that day."  J.M. Dep. at 116:1–12.  Further, J.M. testified that "[o]nce they got an idea of what business we were conducting, they had us stay around the back."  *Id.* at 120:1–8.  Plaintiff

---

[3] For deposition transcripts, the court cites to the page numbers on the reporters' transcript and not to the page numbers automatically generated by the CM/ECF system.

believes the staff at RRI Stockton knew she was being trafficked because "[i]t was all very obvious." *Id.* at 139:9–25.

There was "traffic in and out constantly," "repeated requests for clean towels, clean linen" and "excessive condoms in the garbage cans." *Id.* at 140:5–11. Security guards were present when she went up to a room with "a date" and the guards would smoke marijuana with Blount until plaintiff called Blount saying she was done. *Id.* at 139:14–25. Once, when plaintiff left the RRI Stockton with a "John," she heard a security guard say, "hurry up and leave before we call the cops." *Id.* at 136:17–137:3.

The RRI Stockton is a franchised location. *See generally* Franchise Agreement, Villalobos Decl. Ex. C, ECF No. 136-5; Pl.'s Resp. SUMF No. 11.[4] On March 3, 2006, Accor Franchising North America, LLC (Accor) was the franchisor and Chandrakant and Kala Patel were the franchisees. Franchise Agreement; Pl.'s Resp. SUMF No. 12; *see also* Galbraith Dep. at 193:3–5, Villalobos Decl. Ex. D, ECF No. 153-1.[5] Under the Franchise Agreement, the franchisees have the right to use the RRI brand, name and logo in connection with operating the RRI Stockton. Franchise Agreement at 1; Pl.'s Resp. SUMF No. 14. The Franchise Agreement further stipulates the franchisees' "agents, employees and successors, shall act as independent contractors[.]" *Id.* ¶ 17.1.

The parties dispute whether RRI—the defendant—was ever involved in the franchising arrangement.[6] Pl.'s Resp. SUMF No. 13. In 2008, Accor "sold the company," *see* Galbraith Dep. at 193:23–194:7, and the Franchise Agreements "roll[ed] over," *id.* at 194:8–15. The identity of the purchaser is unclear from the record. RRI then became the "parent company," *id.* at 195:2–

---

[4] The same Franchise Agreement is also included in plaintiff's opposition. *See* Franchise Agreement, El-Kadi Decl. Ex. G, ECF No. 149-9.

[5] Other portions of the same deposition are included in Exhibit B to the Declaration of Jennifer El-Kadi, filed at ECF No. 149-4. The entire deposition is lodged with the court.

[6] During hearing, when questioned about the ownership structure related to RRI Stockton, plaintiff directed the court generally to public SEC filings "with respect to how the Accor property was purchased or the acquisition of the Red Roof from Accor." Hr'g Tr. at 15: 2–12, ECF No. 165. Plaintiff's counsel has not offered any SEC documents as part of the record here, and the court has not identified any readily accessible SEC documents of which it might take judicial notice if it were so inclined. It is of course not the court's role to comb public records to fill gaps in a party's case.

6

11; *see also* Resp. UMF No. 13.  Pointing to the Franchise Agreement from 2006—the only agreement in the record—, RRI contends it was never the franchisor.  *See* SUMF ¶ 16.  The parties agree Red Roof Franchising, LLC (RRF) "assumed the role of franchisor under the agreement from Accor Franchising North America, LLC."  Pl.'s Resp. SUMF No. 15; Galbraith Dep. at 377:16–378:2.  RRF receives the franchising fee and the marketing fee.  Galbraith Dep. at 17:2–9, 377:23–378:4.  It is not clear from the record when RRF began receiving these fees.  It is also not clear whether RRF is a wholly-owned subsidiary of RRI or how exactly these entities and RRI Stockton are related.  *See id.* at 13:5–7.  RRI did designate Glenn Galbraith, an RRF employee, to serve as its "corporate representative" under Federal Rule of Civil Procedure 30(b)(6).  *See id.* at 14:3–4; Pl.'s 30(b)(6) Dep. Notice, Galbraith Dep. Ex. 1 at 2 (on file with court).  While on the surface this 30(b)(6) designation appears to support an inference of a formal corporate relationship between RRF and RRI, as discussed further below, the dearth of information in the record to clarify the nature of the relationship ultimately is insufficient to hold RRI liable.

### IV. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*  The parties must cite "particular parts of materials in the record[.]"  Fed. R. Civ. P. 56(c)(1)(A).  The court then views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The party moving for summary judgment must first carry its initial burden of production.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party would not have the burden to prove the disputed claim or defense at trial, then it must carry its initial burden of production at

1    summary judgment in one of two ways: "either produce evidence negating an essential element
2    of the nonmoving party's claim or defense or show that the nonmoving party does not have
3    enough evidence of an essential element to carry its ultimate burden of persuasion at trial."
4    *Nissan Fire*, 210 F.3d at 1102.  Then, to carry its burden of persuasion on the motion, the moving
5    party must then "persuade the court that there is no genuine issue of material fact." *Id.*

6             On the other hand, if the moving party would have the burden to prove the disputed claim
7    or defense at trial, then it must cite portions of the record to show "no reasonable jury" could
8    find in favor of the non-moving party.  *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746
9    (9th Cir. 1997).  It must "establish beyond controversy every essential element" of that claim or
10   defense.  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (per curiam).

11            "If a moving party fails to carry its initial burden of production, the nonmoving party has
12   no obligation to produce anything, even if the nonmoving party would have the ultimate burden
13   of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102–03.  If, however, the moving party does
14   carry its initial burden of production, the nonmoving party must produce evidence to support its
15   claims or defenses and "establish that there is a genuine issue of material fact." *Matsushita*,
16   475 U.S. at 585.  "If the nonmoving party fails to produce enough evidence to create a genuine
17   issue of material fact, the moving party wins the motion for summary judgment.  But if the
18   nonmoving party produces enough evidence to create a genuine issue of material fact, the
19   nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103 (citing *Celotex*, 477 U.S. at
20   322).  **ANALYSIS**

21            The TVPRA provides both criminal and civil penalties for sex trafficking.  *See* 18 U.S.C.
22   §§ 1591, 1595.  Section "1595(a) creates civil liability for two categories of defendants: (1) those
23   who have themselves committed a criminal offense under § 1591 of the TVPRA (i.e., perpetrator
24   liability), and (2) those who are not themselves subject to criminal liability but who knowingly
25   benefitted from participation in a venture that they knew or should have known was committing
26   an offense under § 1591 of the TVPRA (i.e., beneficiary liability)." *A.D. v. Wyndham Hotels &*
27   *Resorts, Inc.*, No. 19-120, 2020 WL 8674205, at *2 (E.D. Va. July 22, 2020) (emphasis omitted).
28   Defendants may also be held vicariously liable under the TVPRA.  *See* Prior Order at 4 (Oct. 17,

2022), ECF No. 42 (citing *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020)).

RRI argues there is no evidence to indicate it is liable under the TVPRA via perpetrator, beneficiary or vicarious liability theories. *See* Mot. at 10–18. Additionally, RRI argues the statute of limitations bars plaintiff from resting her TVPRA claim on incidents that predate April 15, 2022. *Id.* at 16.

### A.     Perpetrator Liability

To establish RRI is liable under a perpetrator liability theory, plaintiff must show RRI knowingly harbored or maintained plaintiff "with knowledge that fraud or force would be used to cause her to engage in a commercial sex act." Prior Order (May 12, 2023) at 3, ECF No. 70 (quoting *Doe v. Fitzgerald*, No. 20-10713, 2022 WL 2784805, at *4 (C.D. Cal. May 13, 2022)). RRI argues plaintiff has not provided sufficient evidence to establish either RRI Stockton employees knew about the alleged events or that the employees reported these events to RRI. *See* Mot. at 14–15; Reply at 2–4. Based on a careful review of the record, the court agrees. Even assuming RRI Stockton employees had knowledge that fraud or force would be used to cause plaintiff to engage in a commercial sex act – and the only evidence that might support this conclusion is plaintiff's own testimony –, there is no evidence to link this knowledge to RRI.

Despite plaintiff's arguments to the contrary, Glenn Galbraith's testimony does not provide sufficient evidence to establish this link. There is the threshold question, left unanswered by the record, of exactly what role Galbraith played with respect to RRI, given that he said he worked for RRF. As noted, Galbraith appeared for deposition as RRI's designated "corporate representative" under Federal Rule of Civil Procedure 30(b)(6). Galbraith Dep. at 8:11–12, 11:19–24; Pl's 30(b)(6) Dep. Notice. Galbraith works for RRF. Galbraith Dep. at 14:3–7. At the beginning of the deposition, plaintiff's counsel asked Galbraith whether he would understand questions that referred to "Red Roof" to "mean the defendants you're here to testify about[.]" *Id.* at 12:1–5. The deposition took place on March 7, 2024. *Id.* at 1. At the time, as is the case now, there was only one defendant remaining in the action. *See* Min. Order (Feb. 28, 2023) (dismissing defendant Choice Hotels International, Inc.). RRI's counsel objected to

1  plaintiff's counsel's questions and noted RRI and RRF were two different entities, asked
2  plaintiff's counsel to clarify his question for the record. Galbraith Dep. at 12:6–10, 19-21.
3  Plaintiff's counsel acknowledged the request. *Id.* Despite being put on notice regarding the
4  distinction defense counsel was making between RRI and RRF, plaintiff's counsel subsequently
5  reverted to phrasing questions using the generalized label "Red Roof" and made no effort to
6  verify which entity Galbraith was referring to whenever he responded. *See, e.g.*, *id.* at 15:23–24
7  ("And did you review any policies that the company Red Roof may have during that time
8  frame?").

9  Regarding RRI Stockton, Galbraith testified he visited the RRI Stockton property several
10 times in 2012, although the exact dates are unclear. *See id.* at 53:22–23. He testify human
11 trafficking is not something "Red Roof" wants to occur on its property and "[w]e want the
12 [property level or franchisee] employees to be the eyes and ears of the property." *Id.* at 114:10–
13 115:6. Further, Galbraith testified that while "we" did not have a written policy, *see id.* 85:16–20,
14 "we" instruct the franchise "that if there is an incident that possibly could cause a media alert or
15 something that's complex where they're going to need some advice from us, we want them to
16 report it," *id.* at 166:7–13. However, "[i]t's at the discretion of the franchise owner whether to
17 contact or not." *Id.* 166:6–7.

18 There is no evidence in the record to demonstrate RRI Stockton ever reported any
19 criminal activity to RRF or RRI during the time J.M. was trafficked, let alone that it reported
20 J.M.'s specific trafficking. Plaintiff herself states she "does not know" if RRI received trafficking
21 reports, but "assume[s]" it did. Opp'n at 12. However, an assumption without more is not
22 enough at the summary judgment stage. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136
23 (9th Cir. 2009) ("While we must draw all reasonable inferences in favor of the non-moving party,
24 we need not draw inferences that are based solely on speculation." (citation omitted); *see also*
25 *Blackshire v. Cnty. of Yuba*, 648 F. Supp. 3d 1221, 1235 (E.D. Cal. 2023) (finding unsupported
26 speculation did not create triable issue of fact). Additionally, even the circumstantial evidence
27 plaintiff presents is insufficient to raise a triable issue of fact related to RRI's knowledge. First,
28 as discussed previously, the relationship between RRI and RRF is murky at best. Second, even

assuming the record made this relationship clear, and RRF's or RRI Stockton's knowledge could be imputed to RRI, there is no evidence to indicate RRI Stockton ever reported any incidents to RRF or RRI.

Accordingly, the evidence of record before the court does not show a triable issue of fact as to the knowledge requirement of perpetrator liability.

### B. Beneficiary Liability

To prove RRI is liable under a beneficiary liability theory, plaintiff must show RRI (1) knowingly benefitted (2) from participation in a venture (3) that it knew or should have known has engaged in trafficking the plaintiff. 18 U.S.C. § 1595(a); *see also J.C. v. Choice Hotels Int'l, Inc.*, No. 20-00155, 2020 WL 6318707, at *3–4 (N.D. Cal. Oct. 28, 2020). RRI claims there is no evidence to support liability against RRI on a beneficiary theory. Mot. at 10. Plaintiff disagrees. *See* Opp'n at 12–15.

However, even assuming there is a genuine dispute as to the first two elements, as explained above, there is no evidence in the record to demonstrate RRI Stockton ever informed RRF or RRI about criminal activity during the time J.M. was trafficked. Without this, a reasonable trier of fact cannot reasonably infer RRI knew or should have known about plaintiff's trafficking at the RRI Stockton.

For the same reasons as above, the evidence does not show a triable issue of fact as to the knowledge requirement for beneficiary liability.

### C. Vicarious Liability

Finally, as this court previously has determined, a plaintiff may hold franchisors vicariously liable under the TVPRA for the franchisee's violation of § 1595. Prior Order (Oct. 17, 2022) at 8. To establish RRI is vicariously liable under the TVPRA, plaintiff must show RRI and the RRI Stockton were in an agency relationship and the RRI Stockton or RRI Stockton staff are liable under § 1595. *See J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1065 (D. Colo. 2021). In the TVPRA context, the franchisor-franchisee relationship does not necessarily create an agency relationship unless the franchisor exercises control over the day-to-day operations of the franchisee. *Id.* at 9; *see also J.C.*, 2020 WL 6318707, at *8.

11

1    Here, even assuming RRI or RRI Stockton violated the TVPRA, there is no evidence
2 establishing a connection between RRI Stockton and RRI. Plaintiff points again to the Galbraith
3 deposition to demonstrate the control she says RRI exercised over RRI Stockton. *See* Opp'n at
4 22–24 (citing Galbraith Dep. at 27, 57, 67, 88–89, 104–05, 108, 177–82, 185–87, 200-02, 207,
5 212–13, 227–37, 239–50, 253–57, 265–67, 342–45) . Specifically, according to plaintiff,
6 Galbraith's deposition establishes that RRI handled corporate marketing for the RRI Stockton,
7 provided the online room reservation system, as well as the property management system that
8 tracked which rooms needed to be cleaned. *See* Opp'n at 22. However, in making these
9 statements, Galbraith referred to the entity taking these actions as "Red Roof." Galbraith Depo.
10 at 185:21–186:13. Throughout the deposition and specifically during the times plaintiff argues
11 Galbraith's testimony shows the control RRI exercised over RRI Stockton, Galbraith refers to
12 "Red Roof" without clearly differentiating between RRI and RRF. *See generally* Galbraith Dep.
13 Toward the end of the deposition, in response to questions from defense counsel, Galbraith
14 effectively clarifies that the entity he was referring to as "Red Roof," when testifying about
15 "brand standards" and "operating procedures" was RRF—not RRI. *Id.* at 377:23–378:18.

16    In sum, it is not clear from the record whether RRF is a wholly-owned subsidiary of RRI,
17 or what the relationship is between the two. *Id.* at 13:5–7. Even if Galbraith's designation as
18 RRI's 30(b)(6) representative signals a relationship between RRI and RRF, such a weak signal,
19 without more, is ultimately insufficient to establish the requisite agency relationship needed here.
20 *See*, *e.g.*, *Anderson v. Cnty. of Fresno*, No. 21-01134, 2023 WL 2761168, at *66 (E.D. Cal.
21 Apr. 3, 2023), *report and recommendation adopted*, No. 21-01134, 2023 WL 4637099 (E.D. Cal.
22 July 20, 2023) (noting under California law, "[t]o establish liability under an agency theory when
23 the purported principal and agent have a parent-subsidiary relationship, plaintiffs 'must show
24 more than mere representation of the parent by the subsidiary in dealing with third persons.'").

25    Finally, even assuming Galbraith's deposition could reasonably be construed to establish
26 RRF is in fact a wholly-owned subsidiary of RRI – and the court finds it cannot –, plaintiff does
27 not establish RRI is vicariously liable. "As a general principle, corporate separateness insulates a
28 parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership

12

of the subsidiary." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (citation omitted). While there are exceptions to this rule, *see id.* (noting "the veil separating affiliated entities may be pierced to impute liability from one entity to the other" (citation omitted)), without any information in the record to make clear the relationship between RRI and RRF and establish the requisite link, there is no triable issue of fact left for the jury. *See Nissan Fire*, 210 F.3d at 1103.

RRI's motion for summary judgment is granted and the court need not reach the statute of limitations issue.

## VI.  CONCLUSION

For the reasons set forth above, the court **grants** RRI's motion for summary judgment. This order resolves ECF Nos. 136 and 150.

IT IS SO ORDERED.

DATED: October 18, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE